IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN-CUSTODY INTERNATIONAL CORPORATION, a Nebraska corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | 8:07CV176 |
| v. | ) ) | |
| WILLIAM D. TAPER, | ) ) | MEMORANDUM OPINION |
| Defendant. | ) ) | |

INTRODUCTION

This matter came before the Court for trial on July 28, 2008.  At the close of all the evidence on July 31, 2008, both parties rested, waived closing argument and moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).  The Court, having taken the motions under advisement, has considered the evidence, the briefs and arguments of counsel, and the applicable law, and will deny all pending motions and enters the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

FINDINGS OF FACT

1.  In late 1999 or early 2000, William Clark contacted William Taper by telephone for the purpose of seeking venture capital for the potential development of a new type of handcuff. At that time, Mr. Taper was President of Impact Solutions, Inc., a software company located in San Diego, California.

2. On February 11, 2000, William Clark, Donald Clark ("the Clarks"), each individually, and Impact Solutions, Inc., a California corporation, executed a confidentiality agreement.

3. The confidentiality agreement was signed by William Taper as chairman of Impact Solutions.

4. The confidentiality agreement does not purport to bind William Taper individually and the Court finds that William Taper is not bound by the confidentiality agreement.

5. In March of 2000, Taper engaged the services of attorney Mark Kruse of San Diego for the purpose of drafting certain documents and agreements necessary to incorporate in the State of Nebraska.

6. On May 23, 2000, Kruse filed the articles of incorporation of In-Custody International Corporation ("In-Custody") with the Nebraska Secretary of State.

7. Kruse also prepared the organizational minutes of In-Custody by unanimous written consent of the board of directors ("Organizational Minutes").

8. The Organizational Minutes set forth the requirements for the issuance of stock in the company, the number of shares each person was to receive and the consideration to be paid. Taper was to be issued 33,333 shares of In-Custody stock in exchange for payment of $3000.00 to the company. Donald Clark and William Clark were each to be issued 33,333 shares of In-

Custody stock in exchange for written assignment of all their interest in certain handcuff invention rights.

9. The Organizational Minutes were signed by Donald Clark, William Clark, and William Taper.

10. Neither Donald Clark nor William Clark ever executed a written assignment of the invention rights and the Court finds that Donald Clark and William Clark have not assigned their invention rights to In-Custody and that In-Custody never owned the invention rights.

11. In late September or early October, 2000, Donald Clark, William Clark, and William Taper met with representatives of ARINC and made a presentation for the purpose of determining whether ARINC would be willing to become involved in the design, prototype creation and production of a design of handcuff.

12. William Taper arranged the meeting with ARINC and helped in the preparation of the presentation to them.

13. The presentation to ARINC failed and a significant disagreement and resulting acrimony arose by and between Donald Clark and William Taper.

14. By letter dated October 12, 2000, Taper wrote to the Clarks indicating his dissatisfaction with the outcome of the presentation to ARINC, objecting to their ongoing business relationship and indicating his intent to withdraw from further involvement with the Clarks. The letter also asserts TPR, Inc.'s

ownership "relating to the 'gear' concept of a locking mechanism."

15. By letter dated October 31, 2000, attorney Richard M. Jones, on behalf of the Clarks, acknowledged and agreed that the parties "must part ways." Jones also stated in that letter that the Clarks have no interest in the gear concept of a locking mechanism.

16. Upon receipt of the October 31, 2000, letter, William Taper was no longer an officer or director of In-Custody.

17. By letter dated September 14, 2001, attorney Thomas J. Young, on behalf of the Clarks, stated that the Clarks have no interest in the "push pin lock" concept.

18. The Clarks have no interest in the gear concept of a locking mechanism or in the push pin lock concept.

19. In-Custody was dissolved for nonpayment of occupational tax in the year 2001 and was reinstated effective in 2001 pursuant to a certificate of revival or renewal issued March 19, 2007.

20. The domestic corporation occupation tax report filed by the plaintiff in connection with its revival listed Donald Clark and William Clark as the sole officers of the corporation.

21.  On March 5, 2002, Taper filed the first patent application.  On May 27, 2003, the application was granted and U.S. Patent No. 6,568,224 was issued.

22.  On March 21, 2003, Taper filed the second patent application.  On February 3, 2004, the application was granted and U.S. Patent No. 6,684,666 was issued.

23.  On January 28, 2004, Taper filed the third patent application.  On December 27, 2005, the application was granted and U.S. Patent No. 6,978,644 was issued.

24.  On December 8, 2005, Taper filed the fourth patent application.  On March 7, 2006, the application was granted and U.S. Patent No. 7,007,518 was granted.

25.  On March 21, 2007, the Clarks filed this lawsuit in the District Court of Douglas County, Nebraska and it was subsequently timely removed to this Court.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## CONCLUSIONS OF LAW

As an initial matter, the Court observes that "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  Because the Court has found that the Clarks never assigned their designs to In-Custody, it must now conclude that In-Custody is not the proper plaintiff

here.  However, "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  *Id.* at (3).  Here, as the owners of the designs, the Clarks could be substituted.  However, even if the case were to be prosecuted in their names, each of their claims would be dismissed.

Breach of Fiduciary Duty

In order to establish a prima facie case on their breach of fiduciary duty claims, the Clarks must prove by a preponderance of the evidence, among other things, that Taper owed a fiduciary duty to them.  This they cannot do.  Any fiduciary duty Taper owed was due to In-Custody, not to the Clarks individually.  Moreover, even if In-Custody had been the owner of the designs, Taper's role as an officer and director was terminated on October 31, 2000.  The Court has found that Taper's duties as a director terminated along with his employment.  However, even if Taper had been terminated as an officer but not as a director, as the Clarks now claim, Taper, who had no direct contact with In-Custody or the Clarks after October 31, 2000, no longer exercised any management authority over In-Custody after that date.  The Nebraska Supreme Court has recently held that in circumstances where a fiduciary retains the title of an officer

but no longer exercises discretionary management authority, the fiduciary duty ceases to exist.  *See Aon Consulting, Inc. v. Midlands Financial Benefits, Inc.*, 275 Neb. 642, 660-662, 748 N.W.2d 626, 642-644 (2008).  Thus the fiduciary duty claim fails.

### Breach of the Confidentiality Agreement

This claim was also improperly brought by In-Custody when the Clarks were the real parties in interest.  In-Custody claims Taper breached a confidentiality agreement with it, but neither In-Custody nor Taper are parties to the agreement.  The agreement is between Impact Solutions and the Clarks as individuals.  Although Taper signed the agreement as chairman of Impact Solutions, there is no indication that he was to be personally bound by its terms.  If in fact Taper breached confidentiality, Impact Solutions may have a cause of action against him.  But here, even if the Clarks had properly brought the claim instead of In-Custody, their claim under this agreement could only be against Impact Solutions, which is not a party to this lawsuit.  Therefore this claim must be dismissed.

### Intentional Interference

A valid claim for tortious interference with a business relationship or expectation requires

> (1) the existence of a valid business relationship or expectancy,
>
> (2) knowledge by the interferer of the relationship or expectancy,

-7-

>> (3) an unjustified intentional act of interference on the part of the interferer,
>
> (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

*Huff v. Swartz*, 258 Neb. 820, 825, 606 N.W.2d 461, 466 (2000) (quoting *Koster v. P & P Enters.*, 248 Neb. 759, 764, 539 N.W.2d 274, 278-79 (1995)).  Because the Clarks did not assign the designs to In-Custody, the plaintiff had no valid business relationship or expectancy.  Similarly, if the Clarks were to be substituted as plaintiffs, no valid business relationship or expectancy exists.  On these facts, the only parties the Clarks potentially could have had a valid business expectancy with are ARINC or In-Custody itself.  However, the evidence shows that far from unjustifiably interfering with any expectancy between the Clarks and ARINC, Taper was actively attempting to help them realize it.  Nor did Taper interfere with any expectancy the Clarks had with In-Custody.  It was he who directed Kruse to prepare the organizational minutes, while the Clarks themselves failed to assign their designs.  Under these circumstances the plaintiff's claim for intentional interference must fail.

CONCLUSION

For the reasons stated herein, the plaintiff's complaint will be dismissed. A separate order will be entered in accordance with this memorandum opinion.

DATED this 18th day of August, 2008.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court